# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANCIS NANABA AKUNVABEY, | ) | CASE NO. 3:13cv2781 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| REBECCA ADDUCCI, | ) | |
| ICE DISTRICT DIRECTOR, | ) | |
| | ) | |
| RESPONDENT. | ) | |

*Pro se* petitioner Francis Nanaba Akunvabey filed the above-captioned petition for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner is currently incarcerated in the Bedford Heights City Jail awaiting deportation. In his petition, he challenges his continued incarceration and asserts he has been held for an unreasonable length of time. (Doc. No. 1.) He seeks immediate release from custody. (*Id.*)

## I.      BACKGROUND

Petitioner is a 31-year old citizen of the Republic of Ghana. He entered the United States on an F1 student visa and attended Utica College of Syracuse University from 2003 to 2006.[1] He was convicted of petit larceny in 2006 and was sentenced to three years of probation. At some point, he married a United States citizen and the couple had a daughter.

Petitioner was arrested again in 2012. This time, he was convicted in federal court

---

[1] Petitioner's application suggests that he first arrived in the United States on January 19, 2013. The Court assumes that this represents a typographical error and that his arrival date was January 19, 2003.

on charges of bank fraud and conspiracy to alter money orders for which he was sentenced to fifteen months in prison. He completed his sentence on November 20, 2012 and was transferred to the custody of the Immigration and Customs Enforcement Agency ("ICE").

Petitioner received a Notice to Appear on December 20, 2012. The immigration judge sustained the charges of removability. Petitioner applied for relief from the removal through a status adjustment with a waiver of inadmissibility based on his marriage to a United States citizen. He also requested withholding of removal based on the Convention Against Torture Act ("CAT"). The immigration judge conducted a hearing and concluded that his case merited a favorable decision. The immigration judge noted that his criminal convictions were significant negative factors, but also noted his remorse, rehabilitation, his residence in the United States for an extensive period of time, and the hardship his deportation would have on his wife and daughter who are both United States citizens. The judge granted his request for an adjustment of status to that of lawful permanent resident, but denied withholding of removal based on the CAT. Petitioner does not provide the date that this decision was entered by the immigration judge.

Petitioner represents that the Department of Homeland Security ("DHS") "immediately" appealed the grant of adjustment of status to that of a lawful permanent resident to the Board of Immigration Appeals ("BIA"). (Doc. No. 1 at 5.) Petitioner does not indicate the date the appeal was filed. He states he requested in April 2013 to be released on bond pending a decision on the appeal. He does not state whether his request was granted or denied. He indicates that five months after the DHS filed the appeal, the BIA reversed the immigration judge's grant of adjustment of status, and ordered petitioner to be removed to Ghana. He does not provide the date that order was issued.

2

Petitioner filed an appeal of that decision to the United States Sixth Circuit Court of Appeals on September 25, 2013.[2] That appeal is still pending. He contends he also filed a motion to re-open his appeal with the BIA. He attaches a filing receipt from the BIA for a motion filed on November 18, 2013. He does not indicate the status of that motion.

Petitioner received a Decision to Continue Detention from ICE on December 2, 2013. According to the letter decision, the DHS had requested travel documents from the Consulate General of Ghana. (Doc. No. 1-1.) The Ghana Consulate, however, refused to issue travel documents while petitioner's appeal was pending before the Sixth Circuit. He was informed that DHS was prepared to move forward with the removal once the appeal was final. Petitioner was advised he would not be released from custody at that time. (*See id*.)

Petitioner filed the present petition under 28 U.S.C. § 2241 on December 18, 2013. He argues he has been detained in custody without bond since he was released from prison. He claims this is an unreasonable length of time because he has no foreseeable date of deportation. He seeks release on bond pending his deportation.

## II.    STANDARD OF REVIEW

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Federal courts have habeas jurisdiction to examine the statutory and constitutional basis for an

---

[2] Petitioner does not provide the date he filed the appeal, however, the Sixth Circuit's docket for this case reflects the appeal was filed on September 25, 2013. *See Akunvabey v. Holder*, No. 13-4113 (6th Cir. Filed Sept. 25, 2013).

immigration detention unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517-18, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). Because Petitioner is appearing *pro se*, the allegations in his petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

## III.  GOVERNING LAW AND ANALYSIS

Under 8 U.S.C. § 1226, the Attorney General may arrest and detain an alien pending a decision on whether the alien is to be removed from the United States ("the pre-removal period"). During the pre-removal period, detention without release on bond is mandatory for certain classes of criminal noncitizens. *See* 8 U.S.C. § 1226(c)(1) and (2). The pre-removal period begins when the petitioner is taken into ICE custody and continues until he receives an administratively final order of removal. An order of removal becomes administratively final upon "a determination by the Board of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B).

After the order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period[3] under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *see also*

---

[3] *See* 8 U.S.C. § 1231(a)(1) (stating that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')").

*Morales–Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir. 2005). The government generally is required to remove an alien in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).

The government may, however, detain an "inadmissible" [under 8 U.S.C. § 1182] or criminal alien beyond the statutory removal period. *See* 8 U.S.C. § 1231(a)(6). The government's ability to detain an alien under this provision is not unlimited. *Zadvydas*, 533 U.S. at 699. To avoid a "serious constitutional threat," the Supreme Court interpreted the post-removal-period detention statute to prohibit continued detention "once removal is no longer reasonably foreseeable . . . ." *Id*. Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. *Id*. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id*. at 701. Detention beyond six months, however, does not mean that the alien must be released. *Id*.

In *Zadvydas*, the petitioner had been ordered removed and was being detained beyond the 90-day removal period pursuant to the Attorney General's authority under § 1231(a)(6). *Zadvydas*, 533 U.S. at 684–86. The government, however, could not secure his removal because the designated country of which he was a citizen either refused to accept him or did not maintain a repatriation agreement with the United States. *Id.* Under the circumstances, there was no likelihood that Zadvydas would be deported within the foreseeable future. Recognizing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id*. at 690, the Court ruled that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id*. at 699.

Since the Supreme Court announced its decision in *Zadvydas*, the Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future. In *Demore v. Kim*, the Court approved the mandatory detention of a criminal alien during removal proceedings under 8 U.S.C. § 1226(c) even in the absence of an individualized finding that the alien was unlikely to appear for his removal hearing if released on bond. The Court distinguished *Zadvydas* on two independent grounds. First, in *Zadvydas*, "removal was 'no longer practically attainable,'" whereas it was attainable in Kim's case. *Kim*, 538 U.S. at 527-28 (quoting *Zadvydas*, 533 U.S. at 690). Second, in *Zadvydas*, the period of detention at issue was "'indefinite' and 'potentially permanent.'" *Id.* at 528 (quoting *Zadvydas*, 533 U.S. at 690-91). By contrast, Kim had not demonstrated that there was a real danger of indefinite or permanent detention, and it was therefore premature to apply the due process analysis. *Id*. at 529.

The holding in *Zadvydas* prompted the DHS to issue regulations addressing the criteria established by the Court. *See* 8 C.F.R. § 241.4. Thus, before the 90 day removal period expires, the District Director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). If the alien's release is denied pending removal, the District Director may retain responsibility for custody determinations for up to three months, or refer the alien to the Head Quarters of the Post Order Review Unit ("HQ POCRU") for further custody review. 8 C.F.R. § 241.4(k)(1)(ii).

Petitioner asserts he has been detained since his release from prison on November 20, 2012 and has not yet been deported, thereby entitling him to release under the Supreme Court's decision in *Zadvydas.* He, however, has not provided sufficient information to plausibly support this conclusion.

His detention during the pre-removal period was mandatory under 8 U.S.C. § 1226(c)(1) and (2). That period began when he was released from prison on April 20, 2012. The pre-removal period ends when he receives a final administrative order for removal. Petitioner indicates the immigration judge granted his adjustment of status to that of lawful permanent resident. The DHS appealed that decision. He does not indicate the date on which the appeal was filed. He claims that five months after the appeal was filed, the BIA reversed the decision of the immigration judge. He does not provide the date on which this order was issued. In addition, he claims he filed a motion to re-open his appeal before the BIA. He does not give the date on which he filed this motion, and does not state whether the BIA granted or denied the motion. Without this information, the Court cannot determine whether a final administrative order has been issued or the date on which the removal period began.

The 90-day removal begins on the latest of the following:

**(i)** The date the order of removal becomes administratively final.

**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Detention during the removal period is required under 8 U.S.C. §1231(a)(2). Because petitioner does not provide sufficient information to establish if or when the removal period began, the Court is unable to determine whether petitioner has been held beyond the expiration of the removal period.

Even if the removal period expired, the Attorney General is authorized by 8 U.S.C. § 1231(a)(6) to detain a removable alien beyond the removal period but only for a period reasonably necessary to secure the alien's removal. If petitioner were in that post-removal

7

period, the Court would have to determine whether, like Zadvydas, removal for petitioner is "no longer practically attainable" resulting in a period of detention that is "indefinite" and "potentially permanent." *Zadvydas*, 533 U.S. at 690-91. Based on the allegations in the petition, petitioner failed to demonstrate that he is in this situation.

Petitioner also filed an appeal of the BIA's decision to the Sixth Circuit on September 25, 2013. He received a Decision to Continue Detention from ICE on December 2, 2013 indicating DHS requested travel documents from the Consulate General of Ghana, but the Consulate refused to issue travel documents while petitioner's appeals were pending. He was informed that DHS was prepared to move forward with the removal once the appeal was final. Petitioner has given no indication that Ghana will refuse to issue travel documents once his appeals have been decided. Petitioner may be detained for a period reasonably necessary to secure his removal after the appeals process has been completed. Given the omissions in his complaint, this Court cannot determine whether his due process claims have ripened and are properly before this Court for review. In the event the claims presently exist, and in an abundance of caution, the Court shall grant petitioner leave until September 26, 2014 to file an amended complaint that cures the deficiencies outlined in this Memorandum Opinion and Order. In the event that petitioner fails to timely file a fully compliant amended complaint, the Court shall dismiss petitioner's claims without prejudice.

**IT IS SO ORDERED**.

Dated: August 25, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

8