UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCIS NANABA AKUNVABEY, | ) | CASE NO. 3:13CV2781 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| REBECCA ADDUCCI, ICE District | ) | |
| Director, et al, | ) | |
| | ) | |
| RESPONDENTS. | ) | |

*Pro se* petitioner Francis Nanaba Akunvabey filed the above-captioned action, seeking a Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner is currently incarcerated in the Bedford Heights City Jail awaiting deportation. In his original petition, he challenged his continued incarceration and asserted that he had been held for an unreasonable length of time. On August 25, 2014, the Court issued a Memorandum Opinion and Order outlining numerous deficiencies in petitioner's petition that prevented the Court from determining "whether [petitioner's] due process claims have ripened and are properly before this Court for review." (Doc. No. 4 at 56.) The Court granted petitioner leave to file an amended petition that cured the deficiencies identified by the Court. Petitioner's amended petition is now before the Court. (Doc. No. 5.) Having reviewed the amended petition, the Court remains convinced that this action is premature.

## I.  Background

Petitioner is a 31-year old citizen of the Republic of Ghana. He entered the United States on an F1 student visa on January 19, 2013 and attended Utica College of

Syracuse University from 2003 to 2006. He was convicted of petit larceny in 2006 and was sentenced to three years of probation. At some point, he married a United States citizen and the couple had a daughter.

Petitioner was arrested again in 2012. This time, he was convicted in federal court on charges of bank fraud and conspiracy to alter money orders for which he was sentenced to fifteen months in prison. He completed his sentence on November 20, 2012 and was transferred to the custody of the Immigration and Customs Enforcement Agency ("ICE").

A Notice to Appear was issued for petitioner on December 20, 2012. The immigration judge sustained the charges of removability. Petitioner applied for relief from the removal through a status adjustment with a waiver of inadmissibility based on his marriage to a United States citizen. He also requested withholding of removal based on the Convention Against Torture Act ("CAT"). The immigration judge conducted a hearing and concluded that his case merited a favorable decision. The immigration judge noted that his criminal convictions were significant negative factors, but also noted his remorse, rehabilitation, his residence in the United States for an extensive period of time, and the hardship his deportation would have on his wife and daughter who are both United States citizens. The judge granted his request for an adjustment of status to that of lawful permanent resident, but denied withholding of removal based on the CAT on March 28, 2013.

The Department of Homeland Security ("DHS") appealed the grant of adjustment of status to that a lawful permanent resident to the Board of Immigration Appeals ("BIA") on April 4, 2013. Petitioner states he requested in April 2013 to be released on bond pending a decision on the appeal, but that request was never ruled on by the BIA. He indicates the BIA reversed the immigration judge's grant of adjustment of status, and on August 30,

2013, ordered petitioner to be removed to Ghana.

Petitioner filed an appeal of that decision to the United States Sixth Circuit Court of Appeals on September 25, 2013. He also filed a motion to re-open his proceedings with the BIA on November 15, 2013. That motion was granted on January 14, 2014. The BIA remanded the proceeding the Immigration Court for reconsideration of his application for withholding of removal. Because his removal proceedings were re-opened, and petitioner was no longer subject to a final order of removal, the Sixth Circuit Court of Appeals dismissed his pending appeal for lack of jurisdiction.

The Immigration Judge denied petitioner's application for withholding of removal. Neither petitioner nor DHS appealed that decision.

On May 1, 2014, petitioner filed another motion to re-open proceedings with the Immigration Court claiming his circumstances had changed. He indicated to the court that his wife's genetic testing revealed a high probability of developing breast and ovarian cancer. The Immigration Court granted his motion on May 21, 2014 and conducted a hearing on his application on June 18, 2014. On July 8, 2014, the Immigration Judge granted his waiver and adjustment of status. The DHS appealed this decision to the BIA on July 21, 2014. That appeal is still pending.

In the interim, petitioner continues to remain in custody in the Bedford County Jail. Ghana indicated to petitioner and DHS that it would not issue travel document until the appeals process has concluded. Petitioner indicates he will appeal the BIA's decision to the Sixth Circuit Court of Appeals if it is not favorable to him. He contends that will slow his release. He claims this establishes he will not be released within the foreseeable future and he is therefore entitled to release from jail pending resolution of his immigration appeals.

## II. Standard of Review

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Federal courts have habeas jurisdiction to examine the statutory and constitutional basis for an immigration detention unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517-18, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). Because petitioner is appearing *pro se*, the allegations in his petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

## III. Analysis

Under 8 U.S.C. § 1226, the Attorney General may arrest and detain an alien pending a decision on whether the alien is to be removed from the United States ("the pre-removal period"). During the pre-removal period, detention without release on bond is mandatory for certain classes of criminal noncitizens. *See* 8 U.S.C. § 1226(c)(1) and (2). The pre-removal period begins when the petitioner is taken into ICE custody and continues until he

4

receives an administratively final order of removal. An order of removal becomes administratively final upon "a determination by the Board of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B).

After the order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period[1] under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *see also Morales–Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir. 2005). The Government generally is required to remove an alien in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).

The Government, however, may detain an inadmissible or criminal alien beyond the statutory removal period. *See* 8 U.S.C. § 1231(a)(6). The Government's ability to detain an alien under this provision is not unlimited. *Zadvydas*, 533 U.S. at 699. To avoid a "serious constitutional threat," the Supreme Court interpreted the post-removal-period detention statute to prohibit continued detention "once removal is no longer reasonably foreseeable . . . ." *Id*. Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. *Id*. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. Detention beyond six months, however, does not mean that the alien must be released. *Id*.

---

[1] *See* 8 U.S.C. § 1231(a)(1) (stating that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

In *Zadvydas*, the petitioner had been ordered removed and was being detained beyond the 90-day removal period pursuant to the Attorney General's authority under § 1231(a)(6). *Zadvydas*, 533 U.S. at 684–86. The government, however, could not secure his removal because the designated country of which he was a citizen either refused to accept him or did not maintain a repatriation agreement with the United States. *Id.* Under the circumstances, there was no likelihood that Zadvydas would be deported within the foreseeable future. Recognizing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Id*. at 690, the Court ruled that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized," *Id*. at 699.

Since *Zadvydas* was decided, the Supreme Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future. In *Kim*, the Supreme Court approved the mandatory detention of a criminal alien during removal proceedings under 8 U.S.C. § 1226(c) even in the absence of an individualized finding that the alien was unlikely to appear for his removal hearing if released on bond. 538 U.S. at 531. The Court distinguished *Zadvydas* on two independent grounds. First, in *Zadvydas*, "removal was 'no longer practically attainable,'" whereas it was attainable in Kim's case. *Id*. at 527-28 (quoting *Zadvydas*, 533 U.S. at 690). Second, in *Zadvydas*, the period of detention at issue was "'indefinite' and 'potentially permanent.'" *Kim*, 538 U.S. at 528 (quoting *Zadvydas*, 533 U.S. at 690-91). By contrast, Kim had not demonstrated that there was a real danger of indefinite or permanent detention, and it was therefore premature to apply the due process analysis. *Id*. at 529.

The *Zadvydas* holding prompted the DHS to issue regulations addressing the criteria established by the Court. *See* 8 C.F.R. § 241.4. Thus, before the 90 day removal period

6

expires, the District Director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). If the alien's release is denied pending removal, the District Director may retain responsibility for custody determinations for up to three months, or refer the alien to the Head Quarters of the Post Order Review Unit ("HQ POCRU") for further custody review. 8 C.F.R. § 241.4(k)(1)(ii).

Petitioner asserts he has been detained since his release from prison on November 20, 2012 and has not yet been deported, thereby entitling him to release under the Supreme Court's decision in *Zadvydas*. He, however, has not provided sufficient information to plausibly support this conclusion.

Petitioner's detention is once again considered part of the pre-removal period under 8 U.S.C. § 1226(c)(1) and (2). That period began again when the Immigration Judge granted his motion to re-open the process on May 21, 2014. It will continue until he receives a final administrative order from the BIA. The question here is whether petitioner can continue to be detained under the mandatory pre-removal detention provision of 8 U.S.C. § 1226(c), even if he has been held for more than 90 days.

As an initial matter, "[t]he Attorney General's discretionary judgment regarding the application of this section [8 U.S.C. § 1226] shall not be subject to review [and no] court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). Furthermore, the Supreme Court stated in *Kim* that, "[d]etention during removal proceedings is a constitutionally permissible part of that process[,]" in large part because the proceedings are of "limited" duration. *Kim*, 538 U.S. at 531. Nevertheless, the Supreme Court also stated, "Section 1226(e) contains no explicit provision barring habeas review, and we

7

think that its clear text does not bar [a] constitutional challenge to the legislation authorizing . . . detention without bail." *Id.* at 517; *see also Camacho–Salinas v. United States Attorney Gen.*, 460 F.3d 1343, 1347 (11th Cir. 2006) (stating that federal courts "retain jurisdiction to review constitutional claims or questions of law") (internal quotation marks omitted).

The Sixth Circuit in *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) addressed the question of whether the principles of *Zadvydas* would apply to aliens held beyond 90 days in the pre-removal period. Ly was a criminal alien subject to deportation. He, however, was a citizen of Vietnam which does not accept deportees because there is no repatriation agreement between the United States and Vietnam. Nevertheless, Ly was held in custody for over 500 days before he received a final administrative order for removal from the BIA. The Court determined that for reasons similar to those stated in *Zadvydas,* the pre-removal detention statute should be construed to include an implicit requirement that removal proceedings be concluded within a reasonable time to prevent those aliens from being held indefinitely with no foreseeable opportunity for removal. *Ly*, 351 F.3d at 270. The Court declined to define "within a reasonable time" or to place specific time limits on the length of time an alien can be held in pre-removal detention. Instead, the Court stated, "[a] bright-line time limitation, as imposed in *Zadvydas*, would not be appropriate for the pre-removal period; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant. In the absence of a set period of time, courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Id.* at 271.

This case differs from *Ly* in a number of respects. First, petitioner is not in the category of having no foreseeable opportunity for removal. He is a citizen of Ghana, and

8

Ghana has indicated a willingness to produce travel documents once petitioner's appeals have concluded. *See, e.g., Estenor v. Holder*, No. 1:11-cv-743, 2011 WL 5572596, at *9 (W.D. Mich. Oct. 24, 2011) (distinguishing *Ly* on the grounds that, with respect to Estenor, there was no "institutional barrier to removal").

Second, the government has not dragged its feet in this case. The Immigration Judge granted his waiver of inadmissibility on March 28, 2013. DHS promptly appealed that decision on April 4, 2013. Petitioner requested release on bond on April 30, 2013, but claims DHS did not respond to his request. The BIA reversed that decision on August 30, 2013. Petitioner appealed to the Sixth Circuit. While that appeal was pending, he filed a motion to re-open on November 15, 2013. That motion was granted but the Immigration Court denied his waiver of inadmissibility. He filed a second motion to re-open eight days later. That motion was granted and this time his waiver was granted. DHS appealed and that appeal is pending. During this time, petitioner received regular detention evaluations by DHS under 8 C.F.R. § 241.4(k)(1)(ii). Much of the delay in resolution of the underlying immigration matter is attributable to the petitioner's efforts, not to the government.

While recognizing that appeals and petitions for relief are expected as a natural part of the process, the Sixth Circuit also stated:

> courts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release.

***

An alien who would not normally be subject to indefinite detention cannot be so

> detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id.* at 272.

In this case, petitioner is not someone subject to indefinite detention because his country of origin is unwilling to issue travel documents once his appeals have concluded. Petitioner indicates if he loses this appeal, he will continue to seek review from the Sixth Circuit. DHS is not delaying the decision on deportation. *See, e.g., Kapiamba v. Gonzales*, No. 1:07CV335, 2009 WL 1406648, at *7 (W.D. Mich. May 19, 2009) (distinguishing *Ly* on the grounds that Kampiamba's "repeated attempts to prevent removal greatly increased the length of his detention"). The Court finds the pre-removal detention to be reasonable under the circumstances.

## IV. Conclusion

For all the foregoing reasons, this action is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e). Pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: January 5, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**